UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIVIAN F CHISHOLM | § | |
| | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. H-10-3732 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**OPINION AND ORDER**

Pending before the Court is Defendant United States of America's Motion for Summary Judgment (Doc. 9), as well as Plaintiff Vivian F. Chisholm's ("Chisholm") Response (Doc. 10) and Supplemental Response (Doc. 25).  Upon review and consideration of this motion, the responses thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant's motion should be denied.

I.  Background and Relevant Facts

This is a tort case.  In July 2007, high school student Maigan Brewer ("Maigan") enlisted in the Navy's Delayed Entry Program ("DEP"), which allows individuals to enlist but remain inactive or in the reserves for up to one year before reporting for active duty.  (Pl.'s Original Pet. ¶ 5.2, Doc. 2 at 3.)  In December 2007, after deciding she no longer wished to participate in DEP, Maigan submitted an Entry Level Separation ("ELS") request.  *Id.*  Plaintiff Chisholm, Maigan's grandmother, alleges that Petty Officer Lancelot C. Coley ("Officer Coley"), the officer responsible for ELS requests, threatened to ruin Maigan's career by stamping his name across her social security card, arresting her for breach of government contract, and listing her as Absent Without Leave ("AWOL").  (*Id.*)  Chisholm was not present at the time Officer Coley made these threats.  (*Id.*)

On March 6, 2008, Chisholm asked Officer Coley to reconsider Maigan's ELS request.

(*Id.* at 4.) During their telephone conversation, Chisholm alleges that Officer Coley became irate and again threatened to ruin Maigan's career. (*Id.*) Chisholm told Officer Coley that she had telephoned Texas State Senator Glen Hager to inquire about the rules and procedures regarding ELS, and that Maigan was legally entitled to separation. (*Id.*) Officer Coley then called Chisholm a liar and abruptly ended the conversation by stating that the privacy act prevented him from discussing the matter further. (*Id.*)

On March 13, 2008, Chisholm and Melisa Brewer, ("Brewer") Maigan's mother and Chisholm's daughter, initiated a three-way telephone conference call with Officer Coley's supervisor, Chief Petty Officer Steve Crawford ("Officer Crawford"). (*Id.* at 6.) Chisholm told Officer Crawford she wanted to file a complaint against Officer Coley for handling Maigan's ELS request unprofessionally. (*Id.*) Chisholm says Officer Crawford became irritated, refused to consider her complaint, and used vulgar language. (*Id.*) Shortly after the conversation with Officer Crawford, Chisholm and Brewer initiated a three-way telephone conference call with the Navy recruiting office in Humble, Texas. (*Id.* at 7.) After asking to speak with Officer Crawford's supervisor, Chisholm was transferred to Officer Coley. (*Id.*) Chisholm says Officer Coley accused her of harassment, threatened to have her arrested by the Humble Police Department, threatened to have the Montgomery Sherriff's Department issue a warrant for her arrest, and threatened to place Chisholm on the U.S. Department of Homeland Security's ("Homeland Security") "Terrorist Watchlist." (*Id.*) Later that day, Officer Coley called Brewer to specifically request that Chisholm stop calling him. (*Id.* at 8.) Officer Coley also informed Brewer that Chisholm had been placed on Homeland Security's terrorist watchlist and that she would soon be arrested. (*Id.*) Chisholm did not participate in this conversation. (*Id.*)

Chisholm alleges that on March 14, 2008, Officer Coley called her to confirm her listing

as a terrorist, and informed her that under no circumstances would she be removed from the list. (*Id.* at 9.) On that same day, Chisholm e-mailed a complaint to the Navy office in Austin, Texas, explaining her efforts to secure Maigan's ELS. (*Id.*) That afternoon, Master Chief Ervin ("Chief Ervin") called Chisholm to apologize for the actions of Officers Coley and Crawford. (*Id.*)

On March 15, 2008, Officer Coley again called Chisholm to tell her that she would soon be arrested by Homeland Security. (*Id.* at 9–10.)

On March 27, 2008, Chisholm was notified that her complaint was being addressed by the Naval Inspector General. (*Id.* at 10.) On July 18, 2008, Chisholm received a letter from the Naval Inspector General that corrective actions had been taken. (*Id.* at 11.)

Chisholm says Officer Coley and Officer Crawford's behavior caused her "sleepless nights, short term memory loss, depression, anxiety, lack of focus, purposelessness, crying, anger, grief, worry of being arrested by Homeland Security, nightmares of being arrested by Homeland Security and placed in a cell with actual terrorists, fear of going to any airport or any federal landmark." (*Id.*) Chisholm is currently under the care of a counselor and is taking antidepressants. (*Id.*)

On October 10, 2009, Chisholm submitted an administrative claim to the Navy. (Def.'s Mot. for Summ. J., Doc. 9 at 4.) On April 26, 2010, Chisholm's claim was denied. (*Id.*) On May 13, 2010, Chisholm submitted a request for reconsideration. (*Id.*) On May 24, 2010, her reconsideration request was denied. (*Id.*)

On October 8, 2010, Chisholm filed the instant suit, bringing a claim against the United States for the intentional infliction of emotional distress ("IIED"), as well as a declaratory judgment claim seeking a judicial order removing her from Homeland Security's terrorist watchlist. (Pl.'s Original Pet., Doc. 2.) The United States now moves for summary judgment.

(Doc. 9.)

II. Standard of Review

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

  Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party.

*Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988).  The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

III.  Discussion

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), makes the United States liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The law of the state where the act or omission occurred applies.  *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1450 (5th Cir. 1990).

In Texas, to prevail on an IIED claim, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.  *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

"It is for the court to determine in the first instance whether conduct is extreme and outrageous."  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005).  Conduct rising to

this level is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Zeltwanger*, 144 S.W.3d at 445. "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (quoting *GTE*, 998 S.W.2d at 612). When evaluating whether conduct is extreme and outrageous, courts must consider the context and the relationship between the parties. *City of Keller v. Wilson*, 168 S.W.3d 802, 811–12 (Tex. 2005); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991) (holding that "conduct must be analyzed in context."). "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Restatement (Second) of Torts § 46 (1965); *see Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (adopting Restatement § 46 for IIED claims).

Chisholm alleges Officer Coley threatened to ruin Maigan's career. He threatened to have Chisholm arrested by the Humble Police Department, threatened to have the Montgomery Sheriff's Department issue a warrant for her arrest, and claimed to have placed her on Homeland Security's terrorist watchlist. The United States does not deny these allegations. The Court finds that, in a post-September 11th world, a naval officer's unreasonable threat to place a private person on Homeland Security's terrorist watchlist may be considered extreme and outrageous, exceeding "all possible bounds of decency." *Zeltwanger*, 144 S.W.3d at 445.

Severe emotional distress sufficient to support an IIED claim must be "so severe that no reasonable person could be expected to endure it." *GTE*, 998 S.W.2d at 618; *cf. Washington v. Knight*, 887 S.W.2d 211, 216 (Tex. App.—Texarkana 1994, writ denied) (holding highly

unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry insufficient to support an IIED claim).

Chisholm maintains she suffers depression, anxiety, fear of going to airports, and short term memory loss. (Aff. of Daniel B. Hurst, Doc. 25-4.) Chisholm's fear is directly connected to Officer Coley's threat to place her on the terrorist watchlist. (Aff. of Richard McColl, M.D., Doc. 25-3.) Drawing all reasonable inferences in Chisholm's favor, the Court finds the United States has failed to meet its burden of showing that there is no genuine issue of material fact for trial.

Chisholm also "seeks a judicial declaration that she is not a terrorist" and an injunction ordering Homeland Security to remove her name from the terrorist watchlist. (Pl.'s Original Pet. ¶ 5.19–5.20, Doc. 2 at 11.) Because the United States did not move for summary judgment on Chisholm's Declaratory Judgment Act claim, the Court declines to address the issue *sua sponte*.

IV. Conclusion

Accordingly, the Court hereby **ORDERS** that Defendant United States of America's Motion for Summary Judgment (Doc. 9) is **DENIED.**

**SIGNED at Houston, Texas, this 12th day of August, 2011.**

                                                        MELINDA HARMON
                                           UNITED STATES DISTRICT JUDGE