UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VIVIAN F CHISHOLM § | |
| § | |
| Plaintiff § | |
| VS. § | CIVIL ACTION NO. 4:10-CV-3732 |
| § | |
| UNITED STATES OF AMERICA § | |

**OPINION AND ORDER**

Pending before the Court are Plaintiff Vivian F. Chisholm's ("Plaintiff" or "Chisholm") motion for partial summary judgment in which she seeks "an order from this Court that [she] is not a terrorist" (Doc. 34) and Defendant United States America's ("Defendant," "United States," or "Government") motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for summary judgment. Doc. 36.

Chisholm also has requested that this Court issue an injunction to the Department of Homeland Security ordering it to remove her from its "Terrorist Watchlist," but requests partial summary judgment only for the limited purpose of obtaining "an Order that Plaintiff is not a terrorist." Doc. 34. For the reasons explained below, the Court lacks authority to issue such an order and Plaintiff's motion is denied.

The United States has moved to dismiss on the grounds that Chisholm has failed to demonstrate that Petty Officer Lancelot Coley, whose purportedly maleficent conduct Plaintiff attributes to the United States, acted within the scope of his employment when he verbally abused and threatened Plaintiff and therefore that the Federal Tort Claims Act ("FTCA") does not waive the United States' sovereign immunity from this action. Because United States is immune from suit, Defendant alleges, this Court lacks subject matter jurisdiction to hear the case

and it must be dismissed. Defendant similarly contends that Plaintiff's claim for intentional infliction of emotional distress ("IIED") actually is one for assault, defamation, or misrepresentation and, therefore, is barred by the intentional tort exception to the FTCA and must be dismissed. Finally, Defendant seeks summary judgment on the grounds that Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact on each element of her IIED claim. Because the Government has shown that Coley was acting outside the scope of his authority and that the intentional tort exception applies, its motion to dismiss is will be granted.

A. Background

This case arises out of a number of instances in which Coley, who is not a Defendant in this case, verbally abused, insulted, and threatened Plaintiff in telephone conversations and messages as a result of Plaintiff's attempts to remove her granddaughter from the United States' Navy's Delayed Entry Program ("DEP"). The Court adequately described the underlying factual circumstances in this case in its opinion and order of August 12, 2011. Doc. 30.  In that opinion, the Court found that "in a post-September 11th world, a naval officer's unreasonable threat to place a private person on Homeland Security's terrorist watchlist may be considered extreme and outrageous, exceeding 'all possible bounds of decency.'" *Id.* at 7 (quoting *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). The Court also determined that, "[d]rawing all reasonable inferences in Chisholm's favor," that she adequately demonstrated that she suffered from "depression, anxiety, fear of going to airports, and short term memory loss," which were "directly connected to Officer Coley's threat to place her on the terrorist watchlist." *Id.* at 8.

On February 21, 2012, Plaintiff filed her motion for partial summary judgment. Doc. 34. The same day, Defendant filed its motion to dismiss and for summary judgment. Doc. 36.

B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has filed a motion for partial summary judgment in which she requests that the Court enter an order that "Plaintiff is not a terrorist." Doc. 34 at 3. In her original complaint, Plaintiff sought a declaratory judgment that she is not a terrorist and requested that the Court issue "an injunction ordering the Department of Homeland Security to remove her name from the 'terrorist watch list.'" Doc. 2 at 11. In her motion for partial summary judgment, Plaintiff states that "[i]gnoring whether this Court has the authority to order Homeland Security to remove her from the terrorist watch list, it seems that this Court can and should enter an order declaring that based on all information provided to this Court, Plaintiff is not a terrorist." Doc. 34 at 2-3 (internal citations omitted). Plaintiff's counsel admits that he "has not research[ed] whether this Court could issue an order to Homeland Security." *Id.* n.1. The Court has and the answer is "No." Nor may the Court enter a judgment declaring whether Plaintiff is a terrorist.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (citing 771 28 U.S.C. § 2201(a)). The Supreme Court requires that "that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). Here, whether Plaintiff is a "terrorist" is not a legal right implicated in her case against the United States. Defendant has no defined legal interest in this case in whether Plaintiff is a terrorist, nor does Defendant assert that

she is one. Indeed, other than the fact that "terrorism" is widely denounced and the label most often is applied to those guilty of criminal activity, Plaintiff has not shown the definite legal consequences of being called, or thought of, as a terrorist.

With respect to Plaintiff's request that the Court declare that she is not a terrorist, she has failed to demonstrate the existence of an actual controversy touching the legal rights of parties with adverse legal interests and the Court may not, therefore, issue the relief she seeks.

The Court likewise is unable to order the Department of Homeland Security to take any action in this case. The "terrorist watchlist" to which Plaintiff and Defendant repeatedly refer appears to be the "U.S. government's consolidated Terrorist Watchlist" administered by the Terrorist Screening Center, a unit of the Federal Bureau of Investigation. *See* Terrorist Screening Center, http://www.fbi.gov/about-us/nsb/tsc (last visited August 2, 2012). Plaintiff has not alleged, nor has she shown, that she has been reported to be a terrorist, nor that she was placed on the terrorist watch list. In light of these factors, there does not appear to be a case or controversy here. Moreover, numerous prudential concerns additionally counsel against this Court issuing an injunction to a division of the executive branch responsible for maintaining security records.

"'Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:08-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). Here, the Court exercises its discretion to deny Plaintiff's request for a declaratory judgment.

C. Defendant's Motion to Dismiss

Defendant has moved to dismiss the action on the grounds that Coley's allegedly wrongful conduct was not "within the scope" of his employment and thus not subject to the FTCA's waiver of sovereign immunity. Defendant additionally contends that Plaintiff's claims are barred by the FTCA's intentional torts exception.

1. Legal Standard

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof for a 12(b)(1) motion. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In reviewing a 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A party contesting jurisdiction may make either a "facial" attack, where the allegations in the complaint are insufficient to invoke federal jurisdiction, or a "factual" attack, where the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors*, *LLC*, Bankr. No. 08-10466, 2011 WL 52525, *3 (Bankr. E.D. Tex. Jan. 6, 2011) (citing *Rodriguez v. Tex. Comm'n of Arts*, 992 F. Supp. 876, 878–79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000)). In a facial attack, when a defendant files a Rule 12(b)(1) motion without accompanying evidence, allegations in the complaint are taken as true. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Blue Water*, 2011 WL 52525 at *3 (citing *Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995)).

In a factual attack, the Court may consider any evidence, including affidavits, testimony,

and other documents submitted by the parties that is relevant to the issue of jurisdiction. *Id.* (citing *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989)). Here, for example, the Government introduced affidavit testimony of Captain Melanie F. O'Brien, a Captain in the Navy's recruiting command, in support of its claim that Coley's actions were without the scope of his employment. Doc. 36-1 at 1. A defendant making a factual attack on a complaint may provide supporting affidavits, testimony, or other admissible evidence. *Patterson*, 644 F.2d at 523. The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008) (citing *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court has significant authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

    2. Analysis

The United States contends that Chisholm's claim against it is barred by sovereign immunity. "As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994)). The Federal Tort Claims Act ("FTCA") is a limited waiver to sovereign immunity, that is, a consent to be sued, for suits "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also Truman*, 26 F.3d at 594 ("Through the enactment

of the FTCA, the government has generally waived its sovereign immunity from tort liability for the negligent or wrongful acts or omissions of its agents who act within the scope of their employment.").

Defendant maintains that Coley, whose conduct Plaintiff attributes to the United States, was acting without the scope of his office or employment when he verbally abused and threatened the Plaintiff and therefore that the FTCA waiver does not apply. In the alternative, Defendant contends that if Coley was acting within the scope of his employment, Plaintiff's claim for IIED actually is one for assault, defamation, or misrepresentation and, therefore, barred by the intentional tort exception to the FTCA. Doc. 36 at 12-13.

"[W]hether a particular federal employee was or was not acting within the scope of his employment is controlled by the law of the state in which the negligent or wrongful conduct occurred." *Garcia v. U.S.*, 62 F.3d 126, 127 (5th Cir. 1995). Under Texas law an act is within the scope of employment when it is "[1] within the scope of the employee's general authority [2] in furtherance of the employer's business and [3] for the accomplishment of the object for which the employee was hired." *Anderson v. U.S.*, 364 Fed.Appx. 920, 922 (5th Cir. 2010) (citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)).

In addition, "'the conduct must be of the same general nature as that authorized or incidental to the conduct authorized.'" *Minyard*, 80 S.W.3d at 577 (quoting *Smith v. M Sys. Food Stores, Inc.*, 297 S.W.2d 112, 114 (1957)). "In other words, if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id*. (citing *ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 158 (Tex.App.–El Paso 1996)). Conversely, employees are more likely to be acting within the scope of employment when they act to advance their employer's interests or for the general purpose of

the employer, whether the employer specifically authorized the wrongful act. *See Gulf, C. & S.F. Ry. Co. v. Cobb*, 45 S.W.2d 323, 326 (Tex.Civ.App.–Austin 1931, writ dism'd w.o.j.) (employee's act would be imputed to the employer where the employee was acting to prevent his victim from interfering with the performance of the employee's assigned duties); *Houston Transit Co. v. Felder*, 208 S.W.2d 880, 882 (Tex. 1948) (evidence raised a jury issue as to the company's liability for an assault by its employee where employee testified that his purpose in approaching motorist was to secure information for his employer).

### a. Coley's General Authority

The United States contends that Coley's actions were outside the scope of his general authority because he lacked authority to "receive, consider, or grant a request by an enlistee to withdraw from the Navy's Delayed Entry Program, and to the extent that Officer Coley may have asserted himself in that role . . . he was usurping the authority of the Commanding Officer of the Navy Recruiting District Houston, and acting beyond the scope of his duties as a recruiter." Doc. 36. Chisholm does not complain that Coley improperly denied her granddaughter's request to withdraw from the Navy's Delayed Entry Program, but rather that he acted in an outrageous and offensive manner when she requested that he grant her granddaughter's request. *See* Doc. 2.

Chisholm alleges that, acting in his capacity as a recruiter, Coley improperly and unlawfully insulted and threatened a recruit and her family when the recruit requested that she be excused from her obligation. The Navy Recruiting Command Instructions that the United States introduced states that Coley was "responsible for recruiting all first enlistment men and women for active duty and active duty for training." Doc. 36-1 at 6. That document further states that recruiters "have detailed knowledge of the criteria for enlistment" and therefore "will resolve

cases locally by answering all questions to the best of their ability" and specifically instructs recruiters "not [to] advise or instruct applicants to visit, write, or otherwise communicate with the CNO; Commander, Navy Recruiting Command; DoD or DoN officials; or other headquarters, agencies, or elected officials, for information regarding enlistment." *Id.* at 21. The document also instructs that "[w]hen a parent or relative is in the Navy Recruiting Station and has questions the recruiter cannot readily answer, the recruiter should not hesitate to telephone" the Recruiting Quality Assurance Team. *Id.* at 10. Chisholm also has introduced a single page from the Navy's report of Coley's conduct which states that Coley "acted appropriately in trying to change [the recruit's] mind" when Chisholm's granddaughter expressed her desire to renege on her commitment to the Navy. Doc. 53-2 at 2.

Coley was responsible for recruiting individuals into the Navy. As a recruiter, he was expected to be the first point of contact for recruits and, rather than referring them to his superiors or other branches of the Navy if the recruits had questions, he was expected to find answers himself and report those back to the recruits. He also had the general authority to speak with parents and relatives about recruiting. The Navy's report on the incident indicates that Coley had the authority to attempt to persuade recruit's to "change their mind" if they later sought to withdraw. As the United States points out, however, Coley lacked authority to process a withdrawal request and to place Plaintiff on the "Terrorist Watchlist." Coley had the general authority to recruit, to respond to recruits' requests, to speak with recruits' parents or relatives, and attempt to persuade recruits to abide by their decision to enter the Navy. He did not have the authority to threaten placement on the "terrorist list" or to ruin careers.

b. In Furtherance of the Navy's Business

The United States contends that Coley could not have acted in furtherance of the Navy's

mission because he "violat[ed] a lawful general order or regulation governing his duties as a recruiter" and acted "in pursuit of his own purely personal objectives or vendetta against Ms. Chisholm." Doc. 36 at 9. The United States insists that Coley "was pursuing a personal vendetta against Plaintiff" when he insulted and threatened her. Doc. 36 at 10.

"Texas courts have stated that an employee does not act in furtherance of the employer's business when she 'turns aside' or deviates from the performance of her duties for her own purposes." *Simon v. Bell*, 2011 WL 1233048, *10 (S.D.Tex. 2011) (citing *Goodyear v. Mayes*, 236 S.W.3d at 757; *Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 241 (Tex. 1952). "No liability extends to the employer when the intentional tort is 'actuated by personal animosity' and there is 'no close relation between the [tort] and the performance of the duties of employment.'" *Rodriguez v. Sarabyn*, 129 F.3d 760, 767 (5th Cir.1997) (quoting *Hagenloh*, 247 S.W.2d at 241).

An employer is not liable for an employee's act if the employee had "no intention to perform it as a part of or incident to a service on account of which he is employed." *Rodriguez*, 129 F.3d at 768 (quoting Restatement (Second) of Agency § 235 (1957)). If an employee turns away or deviates from the advancement of his employer's work for his own personal pleasure, he ceases to act for his employer and the responsibility for his personal actions become his alone. *Minyard,* 80 S.W. 3d at 577 (Tex. 2002). The instant case seems closely in point with *Doe v. Catholic Soc. Of Religious and Literary Educ.*, No. H-09-1059, 2010 WL 345926, at *8 (S.D. Tex. Jan 22, 2010 (Rosenthal, J.), which, applying *Minyard*, found that a school teacher was not within the scope of his employment when he sexually abused a student on campus because his behavior was not within his duties as a teacher, nor in the furtherance of the school's business.

### c. For the Accomplishment of the Object for Which Coley was Hired

The United States additionally contends that Coley's behavior towards Chisholm were not within his job description. The evidence before the Court indicates that Coley was hired to recruit, to address recruits' concerns, to attempt to change recruits' minds in the event they attempted to withdraw, and to address recruits' parents' concerns. He was to perform these duties from the Humble Recruiting Station, the location from which he conducted the telephone and in-person conversations with Plaintiff, but he was not to approach his tasks utilizing insult and threats. The Court holds that Coley acted outside the scope of his employment. The case subject to the FTCA's waiver of sovereign immunity.

### d. Intentional Tort Exception

The FTCA excludes from its waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Defendant asserts that Plaintiff's claim for IIED is either a miscast claim for assault, defamation, or misrepresentation, or it "can fairly be read to 'arise out of' conduct that would establish [one of these] excepted cause[s] of action." Doc. 36 at 11 (quoting *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)).

Chisholm's suit definitely arises out of claims of Coley's misrepresentation and deceit. Chisholm alleges that Coley falsely stated that he would place her on the "Terrorist Watchlist" and have her arrested. Doc. 36 at 13. He held himself as the adjudicator of her granddaughter's ELS request, but he had absolutely no authority to receive, consider or grant the ELS request. His threats to have Chislom arrested and placed on the Department of Homeland Security terrorist watch list were idle and empty because he had no authority or ability to carry them out.

Coley led Chisholm to believe that she had in fact been reported to Homeland Security as a terrorist, but he could not have done so and did not ever do so. A suit against the United States for Officer Coley's alleged conduct is barred by the misrepresentation and deceit exceptions to the FTCA, Title 28 U.S.C. Section 2680(h). This Court lacks jurisdiction.

D. Conclusion

Accordingly, it is hereby

**ORDERED** that Plaintiff Vivian F. Chisholm's motion for partial summary judgment (Doc. 34) is DENIED. It is further

**ORDERED** that Defendant United States's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) (Doc. 36) is GRANTED. Because the Court has granted the Rule 12 (b) (1) motion to dismiss for lack of jurisdiction, it need not reach the United States's renewed motion for summary judgment.

SIGNED at Houston, Texas, this 10th day of September, 2012.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE